UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNADETTE IRIGOYEN, personally and on behalf of all similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN BROKERS CONDUIT, ELS INC., JPMORGAN CHASE BANK, N.A., CHASE HOME FINANCE, LLC, U.S. BANK NATIONAL ASSOCIATION, J.P. MORGAN ALTERNATIVE LOAN TRUST, 2007-A2, CALIFORNIA RECONVEYANCE COMPANY, AND NORTHWEST TRUSTEE SERVICES, INC.,<br><br>Defendants. | CASE NO. 1:11-CV-1228 AWI DLB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

**I. History**[1]

Plaintiff Bernadette Irigoyen is the owner of two rental properties ("Properties"): 7900 Kimberly Avenue, Bakersfield ("Kimberly Property") and 7931 Jaime Avenue, Bakersfield ("Jayme Property"). In December 2006, she refinanced the mortgages on the Properties in order

---

[1] The factual history is provided for background; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

to obtain $50,000 in cash. ELS Inc. ("ELS") was her mortgage broker and American Brokers Conduit ("American") was the lender for the two loans. Plaintiff had a preexisting loan of $161,835.88 on the Kimberly Property which was worth $250,000 at the time. ELS stated the Kimberly Property's value was $410,000 in order to arrange a loan for $238,000. The Jayme Property was encumbered by a preexisting mortgage of $267,947.76 and was worth approximately that amount. ESL arranged a refinance with a new loan for $270,000 by stating the Jayme Property was worth $425,000. The new loans were 7.125% interest only loans for 5 years after which the interest rate was variable with a maximum of 12%. Plaintiff alleges that American paid ELS a total of $6,507.15 in yield spread premiums which acted as a kickback for steering Plaintiff to this form of loan.

American then sold the two loans to either JPMorgan Chase Bank ("Chase Bank") or Chase Home Finance ("Chase Home") who acted as attorney in fact for U.S. Bank National Association ("U.S. Bank"), as trustee for J.P. Morgan Alternative Loan Trust, 2007-A2 ("J.P. Trust 2007-A2"). The original trustee on both loans was the North American Title Company. On August 27, 2010, California Reconveyance Company ("Reconveyance") was substituted as trustee on the Kimberly Property loan. On September 28, 2010, Northwest Trustee Services ("Northwest") was substituted as trustee on the Jayme Property loan.

Plaintiff fell behind on her mortgage payments in June 2009. Reconveyance recorded a Notice of Default for the Kimberly Property on July 7, 2010 and a Notice of Trustee Sale on December 8, 2010. Northwest recorded a Notice of Default for the Jayme Property on October 9, 2010 and a Notice of Trustee Sale on September 28, 2010. Plaintiff has neither explained nor objected to this questionable timing regarding the two Notices for the Jayme Property. The Kimberly Property is scheduled to be sold at public auction on August 1, 2011 and the Jayme Property is scheduled to be auctioned on August 8, 2011.

Plaintiff has now filed suit against ELS, American, Chase Bank, Chase Home, U.S. Bank, J.P. Trust 2007-A2, Reconveyance, and Northwest. Plaintiff alleges ELS violated California Civil Code §2923.1(a) by breaching ELS' fiduciary duty to Plaintiff and ELS unjustly enriched itself at Plaintiff's expense. Plaintiff alleges ELS and American jointly violated the Racketeer

Influenced and Corrupt Organizations Act ("RICO") and California Business & Professions Code §17200.  Against all Defendants, Plaintiff seeks an injunction against sale of the Properties. With her complaint, Plaintiff concurrently filed an ex parte request for temporary restraining order, preventing the public sale of the Properties on August 1 and 8.

## II. Legal Standards

Under Rule 65(b), a court may issue an *ex parte* temporary restraining order only if: (1) it clearly appears . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.  Fed. R. Civ. Pro. 65(b); Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006).  Rule 65(b)'s requirements are "stringent," and temporary restraining orders that are granted *ex parte* are to be "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 438-39 (1974); McCord, 452 F.3d at 1131.

The substantive standard for granting a temporary restraining order is the same as the standard for entering a preliminary injunction.  Bronco Wine Co. v. U.S. Dep't of Treasury, 997 F.Supp. 1309, 1313 (E.D. Cal. 1996); Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F.Supp. 1320, 1323 (N.D. Cal. 1995); see also Welker v. Cicerone, 174 F.Supp.2d 1055, 1062 (C.D. Cal. 2001).  A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 374 (2008); Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1160 (9th Cir. 2011). "Injunctive relief . . . must be tailored to remedy the specific harm alleged."  Park Vill., 636 F.3d at 1160.

## III. Discussion

Under the Local Rules of the Eastern District.

> In considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order. Should the Court find that the applicant unduly delayed in seeking injunctive relief, the Court may conclude that the delay constitutes laches or contradicts the applicant's allegations of irreparable injury and may deny the motion solely on either ground.

L.R. 231(b). From the record, Plaintiff was sent a Notice of Trustee's Sale for the Jayme Property on September 28, 2010 and a Notice of Trustee's Sale for the Kimberley Property on December 8, 2010. Doc. 3, Parts 3 and 10. Yet, Plaintiff waited until July 25, 2011 to file the motion for ex parte TRO, stating "this matter cannot be heard on full notice because Plaintiff's real estate properties subject to this action are scheduled to be sold at public auction, one on August 1, 2011 at 10 a.m. and the other on August 8, 2011." Doc. 6, Motion at 1:22-26. That is, Plaintiff waited until the week before the first sale to file a request for ex parte TRO. Plaintiff has been on notice for months that the Third Parties have been actively trying to foreclose on the Properties. Plaintiff has given no explanation for why she could not have filed a motion for preliminary injunction before this time. She only states "I regret now having waited until this last minute to say anything and for putting both my son and the Court in a position to help me on this short notice." Doc. 5, Part 1, Plaintiff's Declaration, at 3:3-5. The court finds the motion for ex parte TRO to be unduly delayed within the meaning of L.R. 231(b), meriting denial.

Further, Plaintiff has not shown a likelihood of success on the merits as she has provided insufficient proof to support her requested injunction. Plaintiff argues that "ELS knew, or should have known, that by using her to carry out its scheme Plaintiff was likely to default on the loan and lose her properties." Doc. 5, Brief, at 3:12-14. She states that "by their very nature those loans had a high probability of default." Doc. 5, Part 1, Plaintiff's Declaration, at 2:10-11. However, Plaintiff has not explained how these loans lead to default. She has not even alleged that the payments on the new loans were larger than the payments on her preexisting loans. This question is particularly salient with respect to the loan on the Jayme Property which appears to

4

have been a pure refinance; the new loan for $270,000 presumably had more favorable conditions for Plaintiff than her old loan for $267,947.26.  The court can not assume that Plaintiff signed an agreement that increased her monthly payments without some statement from Plaintiff to that effect.  Instead, Plaintiff's case appears to center on alleged kickbacks that American supposedly paid ESL for arranging Plaintiff's loans.  While that allegation could give rise to an award for money damages, Plaintiff has not adequately shown how she would have avoided foreclosure but for ESL's and American's actions.

This failure is particularly troubling since the injunction Plaintiff seeks does not affect ESL and American, but rather the Chase Bank, Chase Home, U.S. Bank, J.P. Trust 2007-A2, Reconveyance, and Northwest ("Other Defendants").  ELS never had any interest in the Properties.  Plaintiff represents that American has sold its interest in the Properties to Chase Bank or Chase Home. Doc. 2, Complaint, at 6:24-7:3.  Thus, the requested injunction would not directly affect ELS or American, only the Other Defendants.  Plaintiff's complaint, however, states no actual causes of action against the Other Defendants; the four substantive claims are solely against ESL and American.  As plead, the Other Defendants should properly be considered third parties to this suit as there are serious concerns as to whether the complaint could survive motions to dismiss brought on their behalf.  "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction. If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138-1139 (9th Cir. 2009), quotations and citations omitted.  This issue again highlights the problem with the timing of the ex parte temporary restraining order request.  These are concerns that could have been alleviated had all parties been heard.

**IV. Order**

Plaintiff Bernadette Irigoyen's ex parte request for a temporary restraining order is DENIED.

IT IS SO ORDERED.

Dated: July 28, 2011

CHIEF UNITED STATES DISTRICT JUDGE